UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WORLD WIDE STATIONERY MANUFACTURING CO., LTD., <br><br>Plaintiff, <br><br>vs. <br><br>U.S. RING BINDER, L.P., <br><br>Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )   No. 4:07-CV-1947 (CEJ) <br> ) <br> ) <br> ) <br> ) |

## **AMENDED MEMORANDUM AND ORDER**

On March 31, 2009, the Court issued a claims construction order, construing the term "pivotally connected" to mean "attached (attaching) and capable of rotating or turning about the point of direct or indirect attachment." (Doc. #104, at 33). In accordance with its claims construction order entered on March 31, 2009 (Markman Order), the Court (1) granted plaintiff's motion for partial summary judgment on the issue of infringement of U.S. Patent No. 7,404,685 (the '685 patent); and (2) denied defendant's motion for summary judgment of non-infringement of U.S. Patent No. 7,296,946 (the '946 patent). See (Doc. #162). On July 22, 2009, defendant filed an emergency motion for clarification and/or reconsideration of the Memorandum and Order dated July 21, 2009. In its motion, defendant contends that "[t]he Court's July 21, 2009 Memorandum and Order . . . is inconsistent with the Court's March 31, 2009 Memorandum and Order[.]" (Doc. #163, at 1). Upon careful review, the Court agrees with defendant that the two orders are inconsistent with respect to the term "pivotally connected" in the '685 patent. For the reasons stated below, the Court has reconsidered its Memorandum and Order dated July 21, 2009 with respect to the issue of whether the Insta-Clik contains a travel bar pivotally connected to the lever as set forth in claim 13 of the '685 patent. See infra, § III.B.2.a.

I. **Background**

On November 20, 2007, plaintiff filed its complaint, alleging that defendant infringed the '946 patent. After the Court granted leave, plaintiff filed its first amended complaint on August 4, 2008. In addition to its claim for infringement of the '946 patent, plaintiff alleges that defendant infringed the '685 patent. Specifically, plaintiff contends that defendant infringed claims 1, 11, 12, 16, 17, 20, 21, 22, 24, 26, 28, and 30 of the '946 patent (the '946 patent's asserted claims) and claims 1, 2, 3, 5, 9, 10, 11, and 13 of the '685 patent (the '685 patent's asserted claims). (Doc. #108-3, at 6; #108-5, at 2). On March 31, 2009, the Court issued its Markman Order.

II. **Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).

### III. Discussion

"A determination of infringement requires a two-step analysis. First, the court construes the asserted claims in order to determine their proper meaning and scope." Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1176-77 (Fed. Cir. 2002), citing Markman v. Westview Instruments, Inc., 517 U.S. 370, 391 (1996). "After the court construes the claims, these claims are compared to the accused device." Union Carbide, 308 F.3d at 1177 (citing Bell Atl. Network Services v. Covad Communications Group, Inc., 262 F.3d 1258, 1268 (Fed. Cir. 2001); Biovail Corp. Int'l v. Andrx Pharm., Inc., 239 F.3d 1297, 1301 (Fed. Cir. 2001)). In light of this standard, the Court will now address the parties' motions for summary judgment.

### A. Defendant's Motion for Summary Judgment of Non-Infringement of the '946 Patent

In its motion for summary judgment, defendant contends that the Insta-Clik does not infringe any of the '946 patent's asserted claims because it "does not contain 'a spring for locking the hinge plates in the closed position.'" (Doc. #99, at 8) (citation omitted). Plaintiff points out that the '946 patent's asserted claims actually include the phrase "a spring <u>arranged to bias said travel bar toward the closed position</u> for locking the hinge plates in the closed position." (Doc. #113) (emphasis added). Upon careful review of the record, the Court finds that defendant relies on improperly modified claim language to support its motion for summary judgment. Therefore, the Court

concludes that a genuine issue of material fact exists as to whether the Insta-Clik infringes the '946 patent. As such, the Court finds that defendant is not entitled to summary judgment of non-infringement of the '946 patent.

B.     **Plaintiff's Motion for Partial Summary Judgment of Infringement**

In its motion for partial summary judgment, plaintiff alleges that the Insta-Clik infringes claims 1, 2, 3, 5, 9, 10, 11, and 13 of the '685.

1.     **Claim 1 of the '685 Patent**

Plaintiff argues that each limitation of claim 1 of the '685 patent is present in the Insta-Clik, including (1) a ring binder mechanism that includes a housing, hinge plates, and rings; and (2) a control structure.[1] (Doc. #51-2, '685 patent, col. 16, lines 14-20, 35-40). In its response brief, defendant does not directly address plaintiff's arguments. Instead, defendant simply "incorporates by reference the alternative arguments of non-infringement in its supplemental motion for summary judgment." (Doc. #119, at 12 n.4).

Upon review of defendant's memoranda in support of defendant's supplemental motion for summary judgment, the Court concludes that defendant offers no

---

[1]In its memorandum in support of its motion for partial summary judgment, plaintiff argues that:

> [T]he Insta-Clik incorporates a control structure that includes an actuator (I) and a hinge pin (G) pivotally connecting the actuator to the housing. The device also contains a spring (H) that is received on the hinge pin that connects the actuator to the housing and that is also engageable with the actuator to urge the control structure towards the closed position. Finally, the Insta-Clik contains a travel bar that is operatively connected to the lever (J) and locks the device when the device is in the closed position.

(Doc. #110, at 12) (internal citations and footnote omitted). However, in its Memorandum and Order dated March 31, 2009, the Court construed the term "control structure" to mean "the control structure including a hinge pin, a spring, and a travel bar." See (Doc. #104, at 38). As such, the Court will only consider whether the Insta-Clik infringes the Court's construction of the term.

arguments that address plaintiff's contention that the Insta-Clik literally infringes the limitations of claim 1 of the '685 patent. Moreover, the Court believes that the illustrations in the record and the declaration of plaintiff's expert, Dr. Jeffrey Ball, indicate that the Inta-Clik contains a ring binder mechanism that includes both (1) a housing, hinge plates, and rings; and (2) a control structure as construed by the Court to mean "the control structure including a hinge pin, a spring, and a travel bar." See (Doc. #112-3, at 1-37; #112-4; #112-5). Because defendant has offered no contradictory evidence, the Court finds that defendant has failed to show that a genuine issue of material fact exists as to whether the Insta-Clik literally infringes claim 1 of the '685 patent. As such, the Court concludes that defendant has consequently failed to provide sufficient evidence to create genuine issue of material fact as to whether the Insta-Clik literally infringes dependent claims 2, 3, 5, 9, 10, and 11 of the '685 patent, whose meaning depends on independent claim 1.

2. **Claim 13 of '685 Patent**

As with claim 1, plaintiff argues that the Insta-Clik literally infringes claim 13 of the '685 patent because it includes the limitations of (1) a housing, hinge plates, and rings; and (2) a control structure. (Doc. #110, at 6). Defendant, however, does not address plaintiff's contentions. Alternatively, defendant contends that the Insta-Clik does not literally infringe claim 13 of the '685 patent because it does not contain (1) a travel bar pivotally connected to the lever; (2) a lever having a head; nor (3) an actuator. (Doc. #119).

a. **Does the Insta-Clik Contain a Travel Bar Pivotally Connected to the Lever?**

Defendant contends that the Insta-Clik does not contain a travel bar pivotally connected to the lever because "the travel bar in the Insta-Clik does not rotate or turn

about the lever, nor is it capable of doing so." (Doc. #119, at 7). In response, plaintiff points out that "[p]atent claims are construed as they would be understood by persons experienced in the field of the invention, on review of the patentee's description of the invention in the specification and the proceedings in the Patent and Trademark Office." (Doc. #124, at 3) (citing CIAS, Inc. v. Alliance Gaming Corp., 504 F.3d 1356, 1359 (Fed. Cir. 2007)). Plaintiff also refers the Court to the description and figures in the '685 patent specification, which "teach [that] a travel bar translates along the length of the device, <u>rather than pivoting around the device</u>." (Doc. #124, at 3) (emphasis added) (citation omitted). As such, plaintiff argues that "one skilled in the art would read the claim [language and conclude that] translational movement of the travel bar is necessary to [produce] the pivoting motion[.]" <u>Id.</u>

Because the Court, in its <u>Markman</u> Order, construed the term "pivotally connected" to mean "attached (attaching) and capable of rotating or turning about the point of direct or indirect attachment," claim 13 of the '685 patent requires that the travel bar turn or rotate about the lever in order to fall within the scope of the claim. Plaintiff offers no evidence to show that the Insta-Clik contains the term as construed by the Court; rather, plaintiff attempts to redefine the term. Therefore, the Court finds that it is undisputed that the Insta-Clik does not contain a travel bar that is pivotally connected to the lever as set forth in claim 13.

b. Does the Insta-Clik Contain a Lever Having a Head?

Defendant also maintains that plaintiff has produced no evidence to demonstrate that the Insta-Clik has "a lever having a head." (Doc. #119, at 10). To support its contention, defendant cites to a preferred embodiment in the '685 patent specification, which states that "an enlarged head 53 . . . facilitates gripping and applying force to the lever [that] extend[s] from a narrow body 55." (Doc. #51-2, '685 patent, col. 5,

lines 27-30). Defendant also claims that Dr. Ball, in his declaration, improperly uses the phrases "a lever <u>having a head</u>" and "a lever with a <u>head end</u>" interchangeably. (Doc. #119, at 10) (emphasis in original).

Plaintiff argues that defendant "ignores other statements within the specification that indicate that the particular shape of the lever is irrelevant to the issue of infringement[, such as the statement that] '[a] mechanism having a lever or opening arm shaped differently than illustrated does not depart from the scope of the invention.'" (Doc. #124, at 4-5) (citing Doc. #51-2, '685 patent, col. 13, lines 54-65). Moreover, plaintiff maintains that defendant incorrectly "draws a distinction between the term <u>head</u> and the term <u>head end</u>." (Doc. #124, at 6) (emphasis in original). Plaintiff offers Dr. Ball's declaration to explain that "the term 'head' is used in claim 13 to differentiate one end of the lever from the other." (Doc. #124, at 6) (citation omitted). In his declaration, Dr. Ball states:

> [T]hat "claim 13 adds the limitation that the lever have a head end." He goes on to explain that:
>> One skilled in the art would be aware that the use of the phrase 'head end' for a lever is much like the use of 'free end' for a spring. Namely, the head end is used to distinguish one end of the lever from the other.

(Doc. #124, at 6) (citing Doc. #112-3, at 58-59, ¶ 134).

The record shows that the phrase "lever having a head" in claim 13 of the '685 patent does not refer to a specific type of lever; rather, it merely identifies a location on the lever. Therefore, the Court believes that defendant's "arguments relating to the limitation 'a lever having a head' are illusory[.]" (Doc. #124, at 7). As such, the Court concludes that there is no genuine issue as to whether the Insta-Clik contains "a lever having a head."

    c.    **Does the Insta-Clik Contain an Actuator?**

Finally, defendant argues that the Insta-Clik does not literally infringe claim 13 of the '685 patent because it does not contain an actuator. Defendant refers the Court to the last lines of claim 13, which state that the control structure includes "a torsion spring received on the hinge pin engageable with <u>the actuator</u> for urging the control structure toward said first position." (Doc. #51-2, '685 patent, col. 18, lines 34-36; #119, at 11) (emphasis added). Plaintiff, however, notes that the '685 patent specification includes "[a] lever (broadly, an 'actuator'), designated generally at reference numeral 15, [that] is pivotally mounted on a first longitudinal end of the housing[.]" (Doc. #124, at 7) (citing Doc. #51-2, '685 patent, col. 4, line 15). In addition, plaintiff notes that the specification teaches "that 'the actuators other than levers . . . could be used within the scope of the invention.'" (Doc. #124, at 7-8) (citation omitted).

Upon careful review of claim 13 and the '685 patent specification, the Court believes that "it is clear that a lever is merely a type of actuator and that Claim 13 does not require separate structure for both a lever <u>and</u> an actuator[.]" (Doc. #124, at 8) (emphasis in original). Therefore, the Court finds that it is undisputed that the Insta-Clik contains an actuator because it includes a lever.

Although no genuine issue of material fact exists as to whether the Insta-Clik contains an actuator or a lever having a head, as stated above, it is undisputed that the Insta-Clik does not contain a travel bar that is pivotally connected to the lever. As such, a genuine issue of material fact exists as to whether the Instat-Clik literally infringes claim 13 of the '685 patent. Therefore, the Court concludes that plaintiff is not entitled to summary judgment as a matter of law on Count II of its amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment on the issue of non-infringement of U.S. Patent No. 7,296,946 [Doc. #99] is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment on the issue of infringement of U.S. Patent No. 7,404,685 [Doc. #109] is **denied**.

**IT IS FURTHER ORDERED** that defendant's emergency motion for clarification and/or reconsideration [Doc. #163] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2009.